September 23, 1977

## 77–52 MEMORANDUM OPINION FOR THE GENERAL COUNSEL OF THE DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

### Rehabilitation Act of 1973—Nondiscrimination Provision

You have requested our opinion whether the term "Federal financial assistance," as used in section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Supp. V 1975) (Act), includes Federal programs of guarantee or insurance. Section 504 provides:

> No otherwise qualified handicapped individual in the United States, as defined in section 7(6) of this Act [29 U.S.C. § 706(6)], shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

While it is clear that the term "Federal financial assistance" encompasses direct Federal aid by way of grants and loans, it is unclear whether this term also includes indirect or contingent Federal financial support through programs of insurance or guarantee, such as that provided by the Federal Housing Administration.

The legislative history of § 504 sheds some light on the question. The language that became § 504 first appeared as § 503 of S. 3987, 92d Congress, 2d Session, the Vocational Rehabilitation Act of 1972 (pocket-vetoed by President Nixon). The Senate Report accompanying this bill twice described the provision relating to nondiscrimination against the handicapped as requiring nondiscrimination by Federal *grantees* and elsewhere it used the statutory term "Federal financial assistance." Sen. Rep. 92–1135, 92d Sess. 9, 49 (1972). In one instance, the term "grants" was used in the heading and the text therein spoke in terms of "Federal financial assistance." *Id.* 49. While far from conclusive, this usage in the Senate report intimates that Congress equated direct aid with the term "Federal financial assistance," thus excluding indirect aid through programs of insurance or guarantee.

The nondiscrimination provision in the vetoed 1972 bill was carried forward verbatim in § 705 of H.R. 17, 93d Congress, 1st Session, also vetoed. The provision was then included in the revised bill, which eventually became the Act. The legislative reports and debates on these bills shed no new light on the question.

The Act was amended in 1974. Although § 504 was not itself amended, the definition of handicapped individual in § 7(6) was amended and made more expansive. The Senate report on the 1974 amendments, which is the only legislative report, states that § 504 "was patterned after and is almost identical to the antidiscrimination language of" Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–2000d–6 (1970 ed.) ("Title VI"), and Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681–1686 (1975 Supp.) ("Title IX"). S. Rep. 93–1297, 93d Cong., 2d Sess. 39 (1974). Here again, the report speaks of "grants" and of "Federal financial assistance" interchangeably, thus indicating that § 504 was directed at programs receiving direct Federal aid. *Id.* 40. Additionally, in explaining why the 1974 amendments changed the definition of "handicapped," the Senate report provides examples of kinds of handicapped persons who may inadvertently have been excluded from the prior definition and examples of the kinds of programs receiving Federal financial assistance that might continue to discriminate against these handicapped in the absence of the amendments. It is noteworthy that all of the programs enumerated receive direct Federal aid; none receive Federal support in the form of insurance or guarantees. *Id.* 38. This subsequent legislation and related legislative report, declaring the intent of the previous statute, is entitled to great weight. *See, e.g., Red Lion Broadcasting Co., Inc.* v. *FCC,* 395 U.S. 367, 380–81 (1969).

Neither Title VI nor Title IX, the two models for § 504, prohibit discrimination in programs receiving Federal aid through insurance or guarantee. Indeed, each expressly excludes such programs, albeit in an elliptical way. Section 601 of Title VI, 42 U.S.C. § 2000d (1970 ed.), prohibits discrimination on the basis of race, color, and national origin in the same words as § 504 prohibits such discrimination with respect to a handicap. Section 602 of Title VI, 42 U.S.C. § 2000d–1 (1970 ed.), provides for the enforcement of the policy of § 601 by "each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan or contract other than contracts of insurance or guarantee . . . ." Title IX, which forbids sex discrimination in federally assisted education programs, follows precisely the pattern of Title VI, including the express exclusion in its enforcement section for programs of guarantee and insurance. 20 U.S.C. § 1682 (1975 Supp.).

The Senate report, *supra,* stating that § 504 was modeled on Titles VI and IX, might be used to argue the question either way. One could take the view that because Congress in enacting those laws saw a need

expressly to exclude insurance and guarantees, it believed those programs were otherwise within the meaning of "Federal financial assistance." [1] However, one could also hold that in modeling § 504 on Titles VI and IX, Congress intended the reach of § 504 to be coextensive with that of those titles, thus excluding programs of guarantee and insurance. In our opinion, the second line of reasoning is to be preferred, and the first is historically inaccurate. Indeed, a careful analysis of the legislative history of Title VI supports the conclusion that "Federal financial assistance" excludes programs of insurance and guarantee.

Title VI of the Civil Rights Act of 1964 (1964 Act) was the first Federal statute to prohibit discrimination in programs receiving "Federal financial assistance." Section 602 of the 1964 Act, as reported out of committee, provided for the enforcement of the policy of § 601 by "each Federal department and agency which is to extend Federal financial assistance to any program or activity, by way of grant, contract or loan." H.R. Rep. 88-914, 88th Cong., 1st Sess. 8 (1963).

Opponents of the 1964 Act asserted that the term "contract" was sufficiently broad to bring federally insured or guaranteed programs within the prohibition on discrimination. *See, e.g.,* H.R. Rep. 88-914, *supra,* 70 (minority report). In order to alleviate this fear § 602 was amended on the floor of the House to exclude specifically contracts of guarantee and insurance from that section. When that amendment was being considered, Representative Celler, the floor manager of the bill and the Chairman of the House Judiciary Committee, stated that the bill did not include programs of guarantee and insurance and that the express exclusion was being added solely to put to rest any erroneous suggestions to the contrary. 110 Cong. Rec. 2490, 2500 (1964).

Senator Humphrey, the manager of the bill on the Senate side, asserted that § 601, which does not expressly exclude guarantees and insurance from the term "Federal financial assistance," did not, in any event, include them. 110 Cong. Rec. 7410-7420 (1964). Several Senators who opposed the bill took the contrary position.

Giving the appropriate weight to the floor statements by the managers of the bill in each House, *see, United States* v. *American Trucking Ass'n., Inc.,* 310 U.S. 534, 546-548 (1940), and disregarding the contrary views expressed by opponents of the bill in the Senate, *see, Holtzman* v.

---

[1] It could also be argued that the failure to include an exclusionary provision in the Act reflected a congressional intent to include programs of guarantee and insurance. This argument, however, assumes too much in an obscure area.

The usual pattern of antidiscrimination legislation has been to model such legislation upon the Title VI of the 1964 Act and to include in the enforcement provisions an express exemption for programs of insurance and guarantee. *See,* in addition to Titles VI and IX, 42 U.S.C. §§ 6101-07 (Supp. V 1975) (age discrimination); 20 U.S.C. § 1684 (blindness). Because no enforcement provisions were included in the 1973 Act, no express exemption was included. Thus, giving any weight at all to the failure to include an enforcement provision (and its customary attendant: an exclusion for insurance and guarantees), must also lead to the conclusion that Congress did not intend to authorize and direct the Federal agencies concerned to enforce § 504. Were such to be the case, this inquiry would be moot.

*Schlesinger,* 414 U.S. 1304, 1312–13 n. 13 (Marshall, Circuit Justice, 1973), it appears that the better view is that the term "Federal financial assistance" as used in the 1964 Act did not include programs of guarantee and insurance. Because the same words were used in § 504, the reasonable assumption is that these words were meant to have the same meaning in both acts, thus excluding programs of guarantee and insurance from § 504.

In conclusion, it is our opinion that the term "Federal financial assistance" in § 504 does not include programs of insurance or guarantee. In addition to the analysis above, this conclusion is supported by the absence of any reason to think that Congress intended to extend the prohibition against discrimination of the handicapped beyond that of the existing antidiscrimination legislation with respect to race, color, national origin, sex, age, and blindness.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
